UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JON HENRI BRYANT, SR., <br><br> Movant, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | 4:20-CV-04068-KES <br><br> ORDER MODIFYING REPORT AND RECOMMENDATION AND GRANTING MOTION TO DISMISS |

Movant, Jon Henri Bryant, Sr., filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Docket 1. The United States moved to dismiss Bryant's petition. Docket 13. The matter was referred to United States Magistrate Judge Veronica L. Duffy under 28 U.S.C. § 636(b)(1)(B) and this court's October 16, 2014 standing order. Magistrate Judge Duffy recommends denial of the government's motion to dismiss. Docket 22. The United States timely filed objections and additional submissions to the report and recommendation. Dockets 40, 45, 52. For the following reasons, the court modifies Magistrate Judge Duffy's report and recommendation and dismisses the § 2255 motion of Bryant.

**FACTUAL BACKGROUND**

A full factual background was provided by the magistrate judge in her report and recommendation. Docket 22 at 2-18. Thus, the court will only give a simple explanation and points to the magistrate judge's report and recommendation for the full background.

In his § 2255 motion, Bryant contended his defense counsel were ineffective by (1) failing to investigate his prior mental health history for insanity, (2) failing to request a competency hearing, and (3) failing to call witnesses who would have testified Bryant was not being himself before committing the offense and had been hallucinating. Docket 1 at 4-6. Additionally, Bryant requested an evidentiary hearing to resolve the claims of ineffectiveness of counsel. *Id.* at 8. The United States moved to dismiss Bryant's motion on the basis of the pleadings alone, contending the claims were precluded by his plea of guilty and also arguing the *Strickland* standards were not met. Docket 13; Docket 15 at 8, 12-15.

In the report and recommendation, Magistrate Judge Duffy concluded that in light of the procedural posture of the case, it could not be determined whether there was no set of facts to support Bryant's contentions that one or both of his counsel were ineffective. Docket 22 at 31. In other words, without affidavits from defense counsel it was impossible for the magistrate judge to determine whether there were facts known to counsel that should have prompted them to investigate the issues outlined by Bryant in his § 2255 motion. *Id.* at 32. Magistrate Judge Duffy recommended the government's motion to dismiss be denied at this juncture. *Id.* at 33.

The government subsequently sought an order from the court directing both of the former defense counsel for Bryant to provide affidavits addressing his claims of ineffective assistance of counsel. Docket 28. On October 26, 2020, the court granted the government's motion and directed attorneys Jason

2

Tupman and James A. Eirinberg to respond to the specific allegations of ineffective assistance of counsel raised by Bryant in his § 2255 motion. Docket 32. The affidavit of Jason Tupman was filed on December 11, 2020. Docket 40. James A. Eirinberg's affidavit was filed on December 18, 2020. Docket 45.

Attorney Tupman attests under oath that during his representation he and the office investigator spoke at length with Bryant regarding his mental health history. Docket 40 ¶¶ 2, 4-5. Tupman's office obtained approximately 60 pages of mental health treatment records from Avera McKennan Behavioral Health, which contained records of multiple visits and hospitalizations from 1983, 1985, 1993, and 2007. *Id.* ¶ 5. Records were also sought from the Veterans Administration (VA), but the defense learned the VA had no mental health treatment records for Bryant. *Id.* Tupman indicates he and the investigator interacted with Bryant on numerous occasions both in person and by telephone and neither had any concerns regarding his competency or ability to assist with his defense. *Id.* ¶ 3. Bryant was described as a good historian with a thorough recollection of the events leading up to and during the offense. *Id.* Tupman advised Bryant that he was clearly competent in his opinion. *Id.* ¶ 6.

As to the potential of an insanity defense, Tupman discussed this with Bryant. *Id.* ¶ 7. Based on the evidence in discovery, including Bryant's statements to law enforcement after his arrest, and Tupman's own observations, he concluded the insanity defense would be unavailing. *Id.* Tupman told Bryant the defense team would continue to investigate his mental

3

health issues because they could be relevant to mitigation, but advised him the evidence did not support an insanity defense. *Id.* ¶¶ 7-8.

In so far as Bryant raised claims regarding his state of mind prior to and at the time of the offense, Tupman and his investigator looked into these areas as well. *Id.* ¶¶ 9-11. None of the witnesses Bryant recommended being interviewed indicated they believed him to be hallucinating during the time leading up to the offense. *Id.* Some of the witnesses described him as down or depressed and angry with the victim, and one reported advising Bryant to stop stalking the victim and to leave her alone. *Id.* ¶¶ 10-11. At the time of Tupman's withdrawal from the case, the defense was still attempting to locate other witnesses recommended by Bryant. *Id.* ¶ 13.

Attorney Eirinberg took over the defense after April 26, 2017. Docket 40 ¶ 2; Docket 45 ¶ 4. In his affidavit, Eirinberg states he met with Tupman and the investigator to discuss the case and defense investigation to date. Docket 45 ¶ 9. Eirinberg learned the former defense team had no evidence to indicate Bryant was mentally unfit. *Id.* Eirinberg nevertheless undertook efforts to locate mental health records at a VA hospital in Elyria, Ohio, where Bryant said he had been treated. *Id.* ¶ 10. Eirinberg discovered there was no VA hospital in Elyria, Ohio. *Id.*

In his affidavit, Eirinberg detailed having many lengthy and in-person discussions with Bryant and based on those contacts Eirinberg did not have concerns of any significant mental health issues or an insanity issue. *Id.* ¶¶ 11, 14, 16. Eirinberg stated he had 15 in person meetings with Bryant during his

representation and did not suspect Bryant was suffering from a mental health issue involving insanity. *Id.* ¶¶ 18, 20. Eirinberg prepared a motion requesting a downward departure and/or variance based on mental health concerns as part of the defense case at sentencing; however, Eirinberg attested he did not have a personal basis for believing Bryant had significant mental health issues. *Id.* ¶ 21.

With regard to competency, Eirinberg noted Bryant had good attention to detail, understood trial strategy, and was aware of what could happen at trial. *Id.* ¶ 23. Regarding his state of mind at the time of the offense, Eirinberg stated he did not believe further investigation into that area was necessary based on the investigation and research in the case at the time. *Id.* ¶ 24. The witnesses Eirinberg spoke to did not report any concerns about Bryant having mental health issues, according to Eirinberg. *Id.*

On January 20, 2021, with these affidavits in hand, the government filed its objections to Magistrate Judge Duffy's report and recommendation. Docket 52. The government argues the affidavits of attorneys Tupman and Eirinberg obviate the need for an evidentiary hearing and conclusively demonstrate the *Strickland* standards are not met. *Id.* at 4-5, 15-28. Because Bryant's former counsel in fact conducted the investigation the magistrate judge indicated was not reflected in the record, the government argues the court should dismiss the § 2255 motion without a hearing.

## STANDARD OF REVIEW

The court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The court reviews de novo any objections to the magistrate judge's recommendations as to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In conducting its de novo review, the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994). The court may also receive and consider additional evidence. 28 U.S.C. § 636(b)(1).

## DISCUSSION

Congress enacted 28 U.S.C. § 2255 to supersede habeas corpus claims for federal prisoners. *Davis v. United States*, 417 U.S. 333, 343-44 (1974). Section 2255 allows federal prisoners to "vacate, set aside or correct" a federal sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Generally, petitioners may not raise claims under § 2255 that they failed to raise on direct appeal. *United States v. Frady*, 456 U.S. 152, 167-68 (1982). But because appellate courts generally refuse to review ineffective assistance of counsel claims on direct appeal, such claims are properly addressed under § 2255 motions. *See United States v. Campbell*, 764 F.3d 880, 892-93 (8th Cir. 2014).

6

The Sixth Amendment to the Constitution guarantees criminal defendants the right to assistance of counsel. U.S. Const. amend. VI. The United States Supreme Court has said "the right to counsel is the right to effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (citations omitted). Generally, ineffective assistance claims are analyzed under a two-pronged test: the petitioner must show, first, that his or her counsel's performance was deficient; and second, that he or she was prejudiced by the deficiency. *Id.* at 687. To survive a motion to dismiss, factual allegations must be presented that, if taken as true, support a *plausible* claim of ineffective assistance of counsel. *See Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (emphasis added).

Here, the magistrate judge recommended denying the motion to dismiss because the evidence of record before her, which lacked affidavits from Bryant's defense counsel, did not indicate whether the former counsel investigated the issues identified by Bryant in the § 2255 motion.[1] Docket 22 at 28-31. The evidentiary record has now been supplemented by the affidavits of Bryant's former counsel. The court reviews that evidence de novo in the context of whether Bryant has demonstrated a plausible claim under the *Strickland* test that his former defense attorneys' performance was deficient and such deficiency resulted in prejudice.

---

[1] The court fully agrees with Magistrate Judge Duffy's conclusion based on the record at that time.

### 1.    Deficiency

To demonstrate deficient performance, Bryant must show his former attorneys made errors that were so "serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. This requires a showing that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. A defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. A court must determine, under the totality of the circumstances, whether the acts fell outside the wide range of competent assistance. *Id.* There is a strong presumption that counsel's performance was reasonable and adequate. *Id.*

Bryant's assertions of his former attorneys' deficient representation center around claims of failure to investigate. Docket 1 at 4-6. Strategic choices based on a lack of preparation or investigation are not protected by the presumption that counsel's performance was reasonable. *Thomas v. United States*, 737 F.3d 1202, 1207 (8th Cir. 2013). "[A]n attorney must conduct more than a cursory investigation," but "[a]n attorney is not incompetent in exercising reasonable professional judgment even when, in hindsight, the decision may have been a mistake." *Id.*

In his first ground, Bryant alleges counsel failed to investigate his prior mental health history for a potential insanity defense after it was raised by defendant and his family. Docket 1 at 4. Magistrate Judge Duffy carefully detailed how this alleged failure could support a claim for ineffective assistance

8

of counsel in her report and recommendation. Docket 22 at 27-32. The affidavits of attorneys Tupman and Eirinberg, however, demonstrate that both attorneys investigated Bryant's mental health history, obtained, or attempted to obtain records, and reviewed the disclosed information with Bryant. Docket 40 ¶¶ 4-8, Docket 45 ¶¶ 9-13. Neither attorney observed behavior, statements, or conduct by Bryant that led them to conclude he was suffering from a significant mental health issue. Docket 40 ¶¶ 7-8; Docket 45 ¶ 12. Attorney Tupman attests he specifically advised Bryant that "based on the evidence I saw at this point we could not meet our burden of providing clear and convincing evidence of the affirmative defense of insanity." Docket 40 ¶ 7.

Bryant's second ground for ineffectiveness is that counsel failed to request a competency hearing after failing to investigate his mental health. Docket 1 at 5. This ground fails for the same reasons outlined above. Bryant's former counsel did, in fact, investigate his mental health background. Attorney Tupman stated he and his investigator had many opportunities to interact with Bryant in person and otherwise, but neither of them had concerns about Bryant's competency, that is his ability to assist with his defense and understand the nature of the charges against him. Docket 40 ¶ 3. Attorney Eirinberg's experience with Bryant was similar. Eirinberg met with Bryant at least 15 times and observed that Bryant may have been slightly depressed, which he thought was normal based on the seriousness of the charges and being detained in jail. Docket 45 ¶¶ 7, 11, 16, 18, 19.  The sum of the affidavits of both Attorney Tupman and Attorney Eirinberg is that neither

observed thought processes, demeanor, or behavior that indicated to them Bryant lacked competency to assist in his defense or understand the nature of the charges.

The third and final ground of counsel's alleged deficient performance is a failure to call defense witnesses who would have testified Bryant was not being himself prior to the offense and had been hallucinating. Docket 1 at 6. During his representation, Tupman and his investigator followed up with three of the five witnesses Bryant identified as being familiar his actions leading up to the offense. Docket 40 ¶ 10. Two of the three witnesses described Bryant's state of mind as being "depressed" and "down" because the victim had broken off the relationship with him, and described Bryant as being angry with the victim. *Id.* ¶ 11. The third witness, Bryant's roommate, also described him as being angry with the victim and believed he was "stalking" her. *Id.* ¶ 10. Not one of these witnesses made any suggestion that Bryant was hallucinating. *Id.* ¶¶ 10-11.

Attorney Tupman summarized the results of the defense's investigation as follows:

> [B]ased on the above, I did not feel at the time of our withdrawal the facts supported an insanity defense. By that point we had third party observations of Mr. Bryant immediately leading up to the offense, his own account, his own messages with the victim in the days before, and recorded statements immediately following the offense, all of which indicated he understood his actions and their wrongfulness in my judgment. Although the medical records indicate a history of severe depression surrounding break-ups with romantic partners, they also revealed that during those times he was seeking help to prevent from harming himself or someone else, which indicates he appreciated the nature of either of the feared acts.

Docket 40 ¶ 13.

Attorney Eirinberg became aware of this information and the impressions of Tupman when he took over the defense. Docket 45 ¶ 9. Eirinbeg formed his own impressions which did not lead him to doubt Bryant's competency or sanity. *Id.* ¶¶ 11-12, 14. Eirinberg advised Bryant that in his opinion Bryant would very likely be convicted on all three charges if he went to trial. *Id.* ¶ 13. Based on discussions with counsel, Bryant decided to enter a guilty plea to the single charge of kidnapping. *Id.*

The court accepted Bryant's open plea of guilty to the kidnapping charge on August 1, 2017. *See United States v. Bryant*, 4:16-CR-40125-KES, Dockets 60, 105. After questioning Bryant regarding his background, ensuring he understood his rights and the maximum sentences for the offense, and obtaining his agreement to the facts of the offense, the court concluded Bryant was fully competent and capable of entering an informed plea. *See id.*, Docket 105 at 13.

Magistrate Judge Duffy thoroughly outlined the scope of issues available to a habeas petitioner claiming ineffective assistance of counsel following a guilty plea. Docket 22 at 24-27. The court summarizes that discussion here. The habeas petitioner must demonstrate that his counsel's performance was deficient, but counsel is not required to track down every conceivable defense or constitutional defect. *Id.* at 24-25. "If a defendant admits his commission of a crime, upon good faith, reasonably competent advice from his counsel, the defendant assumes the risk that his attorney might be wrong about the facts or the outcome of a legal issue." *Id.* at 25 (citing *McMann v. Richardson*, 397 U.S.

11

759, 774 (1970)). "Where the allegation of ineffectiveness centers on a 'failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the [petitioner] . . . will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.' " *Id.* at 27 (alteration in original) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Bryant relies upon theories of a failure to investigate by his former defense attorneys. The fatal flaw in Bryant's theories is that it is not accurate. The investigation Bryant claims is lacking was in fact undertaken by his former attorneys. Simply put, the investigation did not pan out in Bryant's favor. Even if counsel's investigation was deemed inadequate, which it is not, Bryant does not address how the alleged deficiencies caused him to plead guilty rather than go to trial. This inquiry is inextricably linked with whether an investigation by counsel would have revealed evidence that would have changed counsel's prediction of the outcome at a trial. *See Hill*, 474 U.S. at 59-60. Bryant has presented no such evidence in this matter.

### 2.   **Evidentiary Hearing**

A court must order an evidentiary hearing "[u]nless the motion and files and records of the case conclusively show that the [petitioner] is entitled to no relief[.]" 28 U.S.C. § 2255(b); *see also Thomas*, 737 F.3d at 1206 ("Evidentiary hearings . . . are preferred, and the general rule is that a hearing is necessary prior to the motion's disposition if a factual dispute exists."). But a petition may be denied without a hearing "if either (1) the [petitioner's] allegations,

12

accepted as true, would not entitle the [petitioner] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Thomas*, 737 F.3d at 1206-07 (alteration in original) (internal quotations and citation omitted).

The court conducted a thorough colloquy during the taking of Bryant's plea to the charge of kidnapping. *See Bryant*, 4:16-CR-40125-KES, Docket 105. The court questioned whether Bryant had an opportunity to discuss his case with Attorney Eirinberg, who represented him at that point. *Id.* at 3. Bryant responded: "Yes." *Id.* The court asked whether Bryant was fully satisfied with the counsel, representation, and advice that he had received from Attorney Eirinberg. *Id.* at 4. Bryant responded: "Yes." *Id.* The court asked Bryant whether any promises, assurances, force, or threats had been made to him to secure his plea of guilty. To all those questions, Bryant responded: "No." *Id.* The court asked whether Bryant understood what the government would have to prove if the case went to trial on the kidnapping charge and outlined the essential elements of the offense. *Id.* at 10-11. Bryant responded: "Yes." *Id.* at 11.

The court had Bryant read the factual basis that was signed prior to the hearing and asked if the statements were truthful. *Id.* Bryant responded: "Yes." *Id.* The court next entered a specific colloquy with Bryant regarding his actions of slapping the victim, telling her to get in the trunk of the car, closing the trunk, transporting her in the trunk so he could talk with her somewhere

13

private, and then traveling from South Dakota to Minnesota and returning. *Id.* at 12-13. To all of those questions, Bryant agreed he had taken those actions. *Id.* Bryant had an opportunity to tell the court in his own words what happened during this colloquy and did in fact clarify several issues. *Id.* At no time during that exchange with the court did Bryant indicate he was not "in his right mind," "hallucinating," or otherwise suffering from a mental defect. *See id.*

A "defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (internal quotations and citation omitted). Any claims that Bryant pleaded guilty because of his former attorneys' failure to investigate his insanity, competency, or mental state at the time of the offense are contradicted by the record and inherently incredible. Thus, the court concludes a hearing on Bryant's § 2255 motion is unwarranted.

Finally, the court has reviewed Bryant's response to the affidavits of his former attorneys. Docket 54. Bryant's response contains a number of assertions and conclusions that have not been submitted under oath. *See id.* The court is not inclined to credit Bryant's unsworn assertions. Nevertheless, even if the court were to accept the veracity of these statements, an evidentiary hearing is still unnecessary.

"The accused has the ultimate authority to make certain fundamental decisions regarding the case." *Thomas*, 737 F.3d at 1207 (internal quotations omitted) (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)). There are four

14

fundamental choices that a defendant has the right to make: (1) whether to plead guilty, (2) waive a jury trial, (3) testify on his or her own behalf, and (4) take an appeal. *Id.* at 1207-08. "The attorney, on the other hand, has the responsibility of making tactical decisions of trial strategy." *Id.* at 1207.

The issues and complaints Bryant raises in his response to the affidavits of Tupman and Eirinberg primarily raise matters committed to the tactical decision making of his former attorneys. *See* Docket 54. For instance, Bryant complains that Eirinberg failed to ask witnesses certain questions at the sentencing hearing and failed to call other witnesses. *Id.* at 1-2. These are strategic and tactical matters committed to the responsibility of the attorney. *See Thomas*, 737 F.3d at 1207.

Bryant disputes what the evidence in the discovery showed. For instance, he claims that what has been referred to as blood on the victim's t-shirt was actually BBQ sauce. Docket 54 at 3-4. Bryant disputes other facts relating to his offense, and he also raises factual issues regarding his relationship with the victim. *See generally* Dockets 44, 47, 54, 55, 58. But those contentions are irrelevant in light of his plea of guilty to the charge of kidnapping and agreement to the essential elements of the offense. *See Nguyen*, 114 F.3d at 705 (holding allegedly exculpatory material did not overcome defendant's own statements at the plea proceedings that "fully establish[ed] his factual guilt").

Bryant disputes his former attorneys' mental impressions of his demeanor, behavior, and conduct. Docket 54 at 2, 5. Whether Bryant agrees with his counsels' impressions of him is not pertinent to whether the

15

investigation performed by his former attorneys was deficient or whether he would not have pleaded guilty and would have insisted on going to trial. Bryant's other assertions are numerous and need not be addressed individually because they are contradicted by the record, inherently incredible, and are not relevant to whether he would have insisted on going to trial instead of pleading guilty. *See Nguyen*, 114 F.3d at 703-04 (holding petitioner's claims that his counsel had not effectively represented him were flatly contradicted by his statements at the plea hearing and the record before the district court).

Nevertheless, the court takes this opportunity to remind Bryant of several important events during his criminal proceedings. First, he was informed of the possible maximum penalties for kidnapping at the change of plea hearing, which included "any term of years up to life." *See United States v. Bryant*, 4:16-CR-40125-KES, Docket 105 at 7. Second, many of the factual disputes he made in the § 2255 motion and his supplemental filings were raised in both testimony and argument at his two-day sentencing hearing. *See United States v. Bryant*, Dockets 100, 106. Third, the court made several revisions to his Presentence Investigation Report based on the evidence and testimony elicited at the sentencing hearing. *See United States v. Bryant*, Docket 106 at 7, 13, 22-24, 27. The court found that the total offense level was 41 which yielded an advisory guideline range of 360 months to life based on his criminal history category II. *Id.* at 47. Fourth, the court received multiple letters from persons on Bryant's behalf in connection with this sentencing, including Conroy Haynes, the person Bryant objects was not called as a

16

witness. *Id.* at 47-49. Fifth, attorney Eirinberg described during his sentencing remarks the defense's attempts to locate VA records for Bryant. *Id.* at 50. Finally, attorney Eirinberg presented a coherent and well-supported argument for a substantial downward deviation or variance in sentence and requested a sentence of 97 to 121 months. *Id.* at 50-53.

The court has carefully reviewed Bryant's § 2255 motion, the report and recommendation of Magistrate Judge Duffy, the affidavits of Attorneys Tupman and Eirinberg, the objections of the United States, and the entire record in both this matter and in *United States v. Bryant*, 4:16-CR-40125-KES. Bryant has failed to present evidence to establish the two-prong test of deficiency and prejudice under *Strickland.* Based on this review, the court concludes it has been conclusively shown that Brant is entitled to no relief.

## CERTIFICATE OF APPEALABILITY

When a district court denies a petitioner's § 2255 motion, the petitioner must first obtain a certificate of appealability before an appeal of that denial may be entertained. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). This certificate may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" is one that proves "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Stated differently, "[a] substantial showing is a showing that issues are debatable among reasonable jurists, a court could

17

resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).

Bryant has not made a substantial showing that his claims are debatable among reasonable jurists, that another court could resolve the issue raised in his claim differently, or that a question raised by his claim deserves additional proceedings. Thus, a certificate of appealability is not issued.

## CONCLUSION

It is ORDERED:

1. The United States' objections to the report and recommendation (Docket 52) are sustained.

2. The report and recommendation (Docket 22) is modified in part as supplemented herein.

3. The United States' motion to dismiss (Docket 13) is granted.

4. Bryant's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Docket 1) is dismissed without an evidentiary hearing.

5. A certificate of appealability is denied.

6. Docket 57 is denied as moot.

Dated April 26, 2021.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE